# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| AUBREIA J. YEARBY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Civil Action Number |
| ) | **2:12-cv-1806-AKK** |
| MICHAEL J. ASTRUE, ) | |
| COMMISSIONER OF SOCIAL ) | |
| SECURITY ) | |
| ADMINISTRATION, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION

Plaintiff Aubreia J. Yearby brings this action pursuant to Section 205(g) of the Social Security Act ("the Act"), 42 U.S.C. § 405(g), seeking review of the final adverse decision of the Commissioner of the Social Security Administration ("SSA"). This court finds that the Administrative Law Judge's ("ALJ") decision - which has become the decision of the Commissioner - is supported by substantial evidence and, therefore, **AFFIRMS** the decision denying benefits.

## I. Procedural History

Yearby filed her applications for Title II disability insurance benefits and Title XVI Supplemental Security Income on July 7, 2009, alleging a disability

onset date of April 21, 2009 due to memory loss, obesity, depression, and hypertension.[1]  (R. 41, 76-77, 132, 136, 165).  After the SSA denied her applications on October 20, 2009, Yearby requested a hearing.  (R. 79-83, 86-87).  At the time of the hearing on January 3, 2011, Yearby was 26 years old, had a high school diploma, and past relevant sedentary work as a taxi cab starter, medium work as a hand packer, and light work as a security guard and cashier/checker.  (R. 66-68).  Yearby has not engaged in substantial gainful activity since April 20, 2009.  (R. 165).

The ALJ denied Yearby's claim on January 21, 2011, which became the final decision of the Commissioner when the Appeals Council refused to grant review on July 18, 2011.  (R. 1-5, 15).  Yearby then filed this action pursuant to section 1631 of the Act, 42 U.S.C. § 1383(c)(3).  Doc. 1.

## II.  Standard of Review

The only issues before this court are whether the record contains substantial evidence to sustain the ALJ's decision, *see* 42 U.S.C. § 405(g); *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982), and whether the ALJ applied the correct legal standards, *see Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988); *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).  Title 42 U.S.C. §§ 405(g)

---

[1]Yearby amended her onset date from March 1, 2008 to April 20, 2009.  (R. 41).

and 1383(c) mandate that the Commissioner's "factual findings are conclusive if supported by 'substantial evidence.'" *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). The district court may not reconsider the facts, reevaluate the evidence, or substitute its judgment for that of the Commissioner; instead, it must review the final decision as a whole and determine if the decision is "reasonable and supported by substantial evidence." *See id*. (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).

Substantial evidence falls somewhere between a scintilla and a preponderance of evidence; "[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Martin*, 849 F.2d at 1529 (quoting *Bloodsworth*, 703 F.2d at 1239) (other citations omitted). If supported by substantial evidence, the court must affirm the Commissioner's factual findings even if the preponderance of the evidence is against the Commissioner's findings. *See Martin*, 894 F.2d at 1529. While the court acknowledges that judicial review of the ALJ's findings is limited in scope, it notes that the review "does not yield automatic affirmance." *Lamb*, 847 F.2d at 701.

### III.  Statutory and Regulatory Framework

To qualify for disability benefits, a claimant must show "the inability to engage in any substantial gainful activity by reason of any medically determinable

physical or mental impairments which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 416(I).  A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrated by medically acceptable clinical and laboratory diagnostic techniques."  42 U.S.C. § 423(d)(3).

Determination of disability under the Act requires a five step analysis.  20 C.F.R. § 404.1520(a)-(f).  Specifically, the Commissioner must determine in sequence:

(1)   whether the claimant is currently unemployed;

(2)   whether the claimant has a severe impairment;

(3)   whether the impairment meets or equals one listed by the Secretary;

(4)   whether the claimant is unable to perform his or her past work; and

(5)   whether the claimant is unable to perform any work in the national economy.

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).  "An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability.  A negative answer to any question, other than step three, leads to a determination of 'not disabled.'"  *Id*. at 1030 (citing 20

C.F.R. § 416.920(a)-(f)).  "Once a finding is made that a claimant cannot return to prior work the burden shifts to the Secretary to show other work the claimant can do."  *Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995) (citation omitted).

### IV.  The ALJ's Decision

In performing the Five Step sequential analysis, the ALJ initially determined that Yearby had not engaged in substantial gainful activity since her alleged onset date and therefore met Step One.  (R. 20).  Next, the ALJ acknowledged that Yearby's severe impairments of morbid obesity and major depressive disorder with features of psychosis met Step Two.  (R. 21).  The ALJ then proceeded to the next step and found that Yearby did not satisfy Step Three since she "does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments."  *Id*.  Although the ALJ answered Step Three in the negative, consistent with the law, *see McDaniel*, 800 F.2d at 1030, the ALJ proceeded to Step Four, where he determined that Yearby

> has the residual functional capacity [RFC] to perform work at all exertional levels but with the following non-exertional limitations: the claimant is unable to climb ladders, ropes, or scaffolds and should only occasionally balance, stoop, kneel, crouch, and crawl.  She may also occasionally climb ramps/stairs.  The claimant retains the ability to understand, remember, and carry out short, simply instructions and to sustain attention sufficient to complete simple, one-step or two step tasks for periods of up to two hours without special supervision or extra rest periods.  Additionally, the claimant would perform best in

>jobs that require the performance of simple, routine, and repetitive tasks; in a work environment free of fast-paced production requirements; that involves only simple work-related decisions; and requires few, if any, work-place changes. Finally, the claimant is able to tolerate superficial contact with others.

(R. 23). In light of Yearby's RFC, the ALJ determined that Yearby "is capable of performing past relevant work as a cashier" because the work "does not require the performance of work-related activities precluded by the claimant's [RFC]." (R. 26). Therefore, because the ALJ answered Step Four in the negative, the ALJ determined that Yearby is not disabled. (R. 28); *see also McDaniel*, 800 F.2d at 1030.

## V. Analysis

The court turns now to Yearby's contentions that the ALJ erred because (1) the mental RFC finding is not based on substantial evidence, and (2) he failed to consider Yearby's impairments in combination. Doc. 7 at 7-11. For the reasons stated below, the court finds that the ALJ's opinion is supported by substantial evidence.

A. *Yearby's mental RFC*

Yearby's first contention of error is that the ALJ failed to properly consider treating physician Dr. James Parker's opinion and to consult a medical expert to clarify Dr. Parker's opinion. Doc. 7 at 8-9. Dr. Parker issued the opinion in

contention in a questionnaire he completed regarding Yearby's mental RFC.  Dr. Parker opined that Yearby had marked restrictions in her ability to participate in activities of daily living, maintain concentration, persistence, or pace, understand, carry out, and remember instructions and perform simple tasks in a work setting, and extreme restrictions in her ability to maintain social functioning, respond appropriately to supervision, co-workers in a work setting, and customary work pressures, and perform repetitive tasks in a work setting.  (R. 328-29).  Also, Dr. Parker added that Yearby's impairment could be expected to last for twelve months or longer.  (R. 329).  After reviewing the record and Dr. Parker's treatment notes in particular, the court finds Yearby's contentions of error unpersuasive.

      Generally, because a treating physician provides a "longitudinal picture" of the claimant's impairments, his assessment is entitled to more weight when it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record." *See* 20 C.F.R. § 404.1527(c)(2).  Furthermore, "the longer a treating source has treated" a claimant, "the more weight we will give to that source's medical opinion." *Id*. at (c)(2)(I).  However, an ALJ can reject a treating physician's assessment if the physician fails to present "relevant evidence to support an opinion." *See id*. at (c)(3).

The substantial evidence supports the ALJ's decision to reject Dr. Parker's opinion. Dr. Parker evaluated Yearby four times in 2010, and nothing in his treatment entries substantiate his opinion that Yearby suffers from marked and extreme impairments. During the first visit in June, Dr. Parker diagnosed Yearby with major depression, post traumatic stress disorder, and obesity and prescribed Cymbalta. (R. 318).[2] Yearby visited Dr. Parker two months later and Dr. Parker remarked that Yearby had improved sleep pattern, mood, and affect, decreased energy level, and no suicidal or homicidal ideation. (R. 315). Dr. Parker evaluated Yearby again a month later and noted no change in Yearby's sleep pattern and an improved mood. (R. 313). Significantly, Dr. Parked noted that Yearby made progress towards her treatment goals. (R. 314). The final visit occurred in October 2010, during which Dr. Parker noted that Yearby had excellent compliance with her medications, no change in her sleep pattern, slightly improved mood, affect, and energy level, and good progress towards her treatment goals. (R. 311-312). Yet, despite this sparse record and without conducting a psychological evaluation, Dr. Parker opined the next month that Yearby had marked or extreme limitations of functioning in daily living, social, and work-place settings.

---

[2]Dr. Parker's treatment notes are largely illegible.

Based on the court's review of Dr. Parker's treatment notes, the ALJ's decision to assign Dr. Parker's opinion "little weight" is supported by substantial evidence. As the ALJ found,

> [Dr. Parker's] opinion is quite conclusory and provides no explanation of the evidence relied upon. Additionally, some of Dr. Parker's statements are inconsistent with the claimant's own allegations. For example, although the claimant described a wide range of daily activities, including cooking, cleaning, shopping, and driving, Dr. Parker stated she had marked limitations in this area. The claimant is also able to maintain part-time employment, which is seemingly inconsistent with an extreme limitation in the ability to respond appropriately to supervision. As a result, Dr. Parker's opinion is given little weight.

(R. 25-26). Moreover, Dr. Parker's treatment notes fail to establish a "longitudinal picture" of Yearby's impairment. Again, Dr. Parker evaluated Yearby only four times over a four month period. *See* 20 C.F.R. § 404.1527(c)(2). To make matters worse, Dr. Parker's opinion that Yearby suffers from marked restrictions in activities of daily living is inconsistent with Yearby's own function report that she cooks, cleans house, shops, does laundry, and goes outside frequently. (R. 184-187, 313, 315). Furthermore, Dr. Parker's finding that Yearby has marked restrictions in, among other things, her ability to maintain concentration, respond appropriately to work-place supervision and co-workers, and perform repetitive tasks in a work setting was completely undermined by evidence presented at the

hearing that Yearby had held a part time job successfully for four months during the same period of Dr. Parker's assessment. (R. 41, 44-45). Finally, Dr. Parker's overall assessment is belied by his treatment notes that Yearby made consistent progress towards her treatment goals, was compliant with her medication, and consistently had improved mood and effect. For all these reasons, the court disagrees with Yearby's contention that the ALJ erred when he rejected Dr. Parker's opinion. *See* 20 C.F.R. § 404.1527(c)(2) and (4).

The court also disagrees with Yearby that the ALJ erred by failing to obtain a medical expert opinion to clarify the "superficial contact with 'others'" requirement because it is inconsistent with work as a cashier and "appear[s] to be a very poor fit for an individual with this limitation." Doc. 7 at 9. Although the ALJ "has a basic duty to develop a full and fair record," *Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003), the ALJ is not obligated to automatically obtain testimony from a medical expert. This is especially the case, where, as here, the vocational expert confirmed that the superficial contact requirement would not impede Yearby from performing her past relevant cashier work:

> ALJ: Let's assume we have a hypothetical person that has no [sic] exertional limitations. This person is unable to climb ladders, ropes, or scaffolds. She is able to occasionally climb ramps and stairs. This person is able to understand, remember, and carry out short, simple instructions. She is able to sustain attention sufficiently to complete

    simple one-step or two-step tasks for periods of up to two hours without special supervision or rest periods.  Let's say this person would perform jobs that require the performance of simple, routine, repetitive tasks in a work environment free of fast-paced production requirements, that involves only simple work-related decisions, and requires few – if any – workplace changes.  This person is able to tolerate superficial contact with others.  So based upon these limitations, would this hypothetical person be able to perform any of the claimant's past work?

    Vocational expert: Your honor, I would say she would be able to work as a cashier. . . .  So I would say yes, as a cashier.  I would say yes as a security guard.  And yes a[s] a taxi cab starter.

(R. 69).  Therefore, based on the record before the court, the ALJ's opinion is supported by substantial evidence.  *See Wilson v. Barnhart*, 284 F.3d 1219, 1227 (11th Cir. 2002).

B.     *The ALJ properly considered Yearby's impairments and presented the vocational expert with a comprehensive hypothetical*

    Yearby's final contention of error is that the ALJ's RFC assessment is not based on substantial evidence because the 1) ALJ failed to "adequately consider [her] impairments in combination," 2) RFC is internally inconsistent with the postural limitations, and 3) ALJ failed to provide a comprehensive hypothetical to the vocational expert.  Doc. 7 at 10, 12.  These arguments are unpersuasive.

    1.    <u>Yearby's impairments in combination</u>

    Yearby contends that the ALJ failed to consider her impairments in

combination, specifically her morbid obesity. Doc. 7 at 11. Unfortunately for Yearby, the ALJ's statement that he considered the claimant's impairments in combination "evidences consideration of the combined effect of [the] impairments." *Jones v. Dep't of Health and Human Serv.*, 941 F.2d 1529, 1533 (11th Cir. 1991); R. 21. Moreover, contrary to Yearby's contention, the ALJ expressly included her morbid obesity diagnosis. Specifically, at Step Two of the sequential process, the ALJ found that Yearby's morbid obesity and major depressive disorder are severe impairments. (R. 21). At Step Three, the ALJ found that Yearby "does not have an impairment or combination of impairments" that meets a listing, "even when the additional and cumulative effects of her obesity are considered." (R. 21, 23). At Step Four, the ALJ stated that "[i]n making [Yearby's RFC] finding, [he] considered *all* symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence." (R. 23) (emphasis added). Finally, the ALJ found that Yearby's "morbid obesity combined with the effects of her non-severe degenerative changes of the knee prevent her from climbing ladders, ropes, or scaffolds." (R. 26). Therefore, Yearby's contention is unfounded.

    2.    <u>Yearby's RFC is consistent with the postural limitations</u>

Yearby contends next that the ALJ's RFC findings are internally

inconsistent because the ALJ determined that Yearby can perform work at all exertional levels although the postural limitations effectively eliminate medium exertion work, as acknowledged by the vocational expert. (R. 23, 69-70). This contention is also unavailing. The ALJ specifically addressed this issue with the vocational expert:

> ALJ: Are there other jobs that require medium exertion that this hypothetical could perform?
> * * * *
> Vocational expert: I would say – with only occasional stooping and kneeling – I would say not too many medium jobs. Certainly light jobs, but I would say the stooping would take out most of the medium jobs.

(R. 68-71). In light of the vocational expert's position, the ALJ ultimately determined at Step Four that Yearby's "ability to perform work at all exertional levels has been compromised by nonexertional limitations." (R. 27). Moreover, relying on the vocational expert's testimony that a person of Yearby's age, education, work experience, RFC, *and nonexertional limitations* could perform cashier, sorter, and assembler jobs, the ALJ determined that Yearby was not disabled because she could perform her past relevant work as a cashier. (R. 27-28). Indeed, the ALJ's finding that Yearby can perform her past relevant work is also consistent with Yearby's activities of daily living. Therefore, the ALJ's finding is supported by substantial evidence. To the extent that the ALJ erred in

finding that Yearby could perform work at all exertional levels in light of her nonexertional limitations, the error is harmless because the ALJ qualified his finding by limiting Yearby to jobs that do not exceed her nonexertional limitations.

    3.    <u>The ALJ presented a comprehensive hypothetical</u>

Finally, Yearby contends that the vocational expert's testimony "did not constitute substantial evidence absent a comprehensive hypothetical." Doc. 7 at 12; (R. 68-71). The court disagrees. The ALJ continued the vocational expert examination, noted *supra* in sections A and B.2., with the following:

> ALJ: Okay. Hypothetical two. All of the limitations we mentioned for hypo one, except this time, we limited the person to doing light work, requiring lifting, carrying, pushing, or pulling, up to 20 pounds occasionally and 10 pounds frequently. [The] [p]erson is able to stand and/or walk for at least total of six hours and to sit for at least a total of six hours. All other limitations still apply. Would this person be able to perform the claimant's past relevant – past work?
>
> Vocational expert: As a cashier and a security guard, yes. . . . There would be product inspectors. . . . There are also food preparation workers.
>
> ALJ: Thank you. And for hypothetical three, let's just assume that this person scan only do sedentary work. Are there other jobs in the economy that this hypothetical person could perform, even with these – all these other limitations?
>
> Vocational expert: Yes. There are products inspectors and sorters. . . . Product assemblers. . . . There are cashiers.

(R. 70). The ALJ's hypothetical accounted for Yearby's severe mental impairments and limitations by restricting Yearby to work that requires attention sufficient to complete simple one or two-step tasks, simple, routine, and repetitive tasks, simple work-related decisions, few work-place changes, superficial contact with others, and work without fast-paced requirements. (R. 23). The ALJ's hypothetical also considered Yearby's severe morbid obesity and non-severe degenerative knee changes (able to frequently lift, carry, push, or pull ten pounds, occasionally balance, stoop, kneel, crouch, crawl, and lift, carry, push, or pull twenty pounds, unable to climb ladders, ropes, and scaffolds, and stand, walk, or sit for six hours). *Id*. Significantly, under all three hypothetical scenarios the ALJ posited, the vocational expert determined that Yearby was capable of performing her past work as a cashier. Therefore, the ALJ's hypothetical took into account Yearby's impairments and is supported by substantial evidence.[3]  *See Wilson*, 284 F.3d at 1227.

      Ultimately, Yearby must meet her burden of proving that she is disabled.

---

[3] To the extent that the ALJ erred by failing to account for Yearby's hypertension diagnosis, the error was harmless because a review of the medical records reveals that Yearby's hypertension is well-maintained since essentially all of her blood pressure readings were within the normal range (132/66, 110/80, 110/80, 155/85, 119/65, 163/86, 163/86, 134/93). (R. 221, 234, 263, 268, 274, 279, 293, 326). Furthermore, regarding Yearby's sleep apnea diagnosis, the record contains insufficient evidence regarding this impairment. (R. 219). In fact, Yearby failed to report sleep apnea in her history of current illnesses when she presented to consultative examiner Dr. Victor Sung. (R. 233).

*See* 20 C.F.R. § 416.912(c). Notwithstanding Yearby's unsubstantiated assertions to the contrary, the record evidence simply does not support her disability claim. Therefore, the court finds that the ALJ's decision is supported by substantial evidence.[4]

## VI. Conclusion

Based on the foregoing, the court concludes that the ALJ's determination that Yearby is not disabled is supported by substantial evidence, and that the ALJ applied proper legal standards in reaching this determination. Therefore, the Commissioner's final decision is **AFFIRMED**. A separate order in accordance with the memorandum of decision will be entered.

Done the 1st day of April, 2013.

_____
**ABDUL K. KALLON**
UNITED STATES DISTRICT JUDGE

---

[4] Yearby's contention that the ALJ's "observation" from the video hearing that Yearby did not appear depressed or have mobility limitations are "misplaced" is unavailing. Doc. 7 at 11. The video hearing did not necessarily restrict the ALJ from making credibility determinations based on Yearby's demeanor. Furthermore, regarding Yearby's purported mobility limitations, there is no evidence in the record that Yearby's mobility is restricted. In fact, the evidence indicates otherwise since Yearby indicated on the function report that she prepares meals, does laundry, performs house cleaning chores, can perform the same tasks now as she could prior to her impairments, goes outside "very often," and has held a part-time job. (R. 41, 45, 184-87, 234).